# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOPER, WILLIAMS, and SCHLACK
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant TRENT V. GOINES**
**United States Army, Appellant**

ARMY 20240592

Headquarters, 1st Infantry Division and Fort Riley
Scott A. Oravec, Military Judge (arraignment)
Alexander N. Pickands, Military Judge (motions & trial)
Colonel Lisa M. Satterfield-Scott, Staff Judge Advocate

For Appellant: Major Beau O. Watkins, JA; Scott R. Hockenberry, Esquire (on brief); Major Beau O. Watkins, JA; Daniel Conway, Esquire (on reply brief); Major Beau O. Watkins, JA; Scott R. Hockenberry, Esquire; Daniel Conway, Esquire (on specified issue brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Vy T. Nguyen, JA; Major Elizabeth G. Van Dyck, JA; Captain Meghan E. Moore, JA (on brief); Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Captain Meghan E. Moore, JA (on specified issue brief).

22 April 2026

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WILLIAMS, Judge:

Appellant raises multiple assignments of error to this court. Two assignments of error warrant discussion but no relief. Specifically, we address appellant's contentions that the military judge improperly instructed the panel in light of *United*

*States v. Mendoza*, 85 M.J. 213 (C.A.A.F. 2024), and that his defense counsel were ineffective for failing to object to the averred erroneous instruction.[1]

An enlisted panel, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of sexual assault, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 [UCMJ]. The military judge sentenced appellant to a dishonorable discharge, fifteen months of confinement, and reduction to the grade of E-1.

## BACKGROUND

Appellant and the victim were members of the same unit stationed in Poland. Their relationship was strictly platonic. Indeed, the victim had previously rejected appellant's romantic advances.

After an early release from duty, appellant, victim, and another coworker visited multiple establishments and the local beach. The group drank alcohol. The victim became intoxicated. Because of her intoxication, the victim had scattered memories of the events of that evening.

Appellant, victim, and another soldier subsequently rented a hotel room. The victim paid for the room. The victim took a shower because she was sandy from the beach. After her shower, the victim put on an oversized, dress-length, zip-up jacket and went to bed. During the night, appellant woke the victim several times by touching her; she awoke when she felt appellant's hand on her zipper, when his hand moved up her legs underneath the jacket, and when appellant touched other parts of her body. Each time, the victim tried to "shove the hand away." Following one event, the victim, frustrated with being awakened, left the bed and slept in a chair for the rest of the night.

The victim confronted appellant over text message in the following days. Appellant reiterated his feelings for the victim, which she rebuffed. Sometime later, appellant asked the victim whether she remembered the night at the hotel. Appellant then stated, "I never would take advantage of you not being sober ever . . . . Nothing really happened because you said no and you don't want to because you weren't comfortable. And I said okay I understand and apologized." Based on these messages, the victim understood appellant's statement "nothing really happened" to mean he had only touched her with his hands.

---

[1] Appellant's opening brief states he personally submitted issues for review pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The government's brief states it reviewed said matters and they lacked merit. Our review of the pleadings discovers appellant did not personally submit matters for our consideration.

Nearly three months later, the victim discovered she was pregnant. Subsequent genetic testing revealed appellant was the biological father, with a "99.99 percent" degree of certainty. Based on these facts, appellant was charged with sexually assaulting the victim, without her consent.

Appellant's account of what occurred in the hotel room evolved over time. When first confronted by his victim, appellant made it clear nothing happened because she said no. Later, appellant told SSG ███ he and the victim kissed, but the victim told him to stop, so he did and went to sleep. Appellant gave conflicting accounts to SPC ███, ranging from he did not remember having sex with the victim to directly denying he had sex with her. He made it clear to SPC ███ that nothing happened with the victim. Appellant told SPC ███—after appellant was aware he was under investigation for sexual assault—that he and the victim had consensual sex, but he stopped because he was too well-endowed.

The government charged appellant with a single specification of sexual assault without consent. Following the presentation of evidence in appellant's case, the military judge and the parties met several times to discuss instructions. The military judge provided draft instructions. The military judge also solicited and received draft instructions from the parties that were "largely consistent" with those he intended to give. When the military judge asked whether either party had "any objection to the instructions that [he] propose[d] to use to instruct the panel members on the law in [appellant's] case," defense counsel stated, "No, Your Honor." The military judge then asked whether there were "other instructions the parties would request." Defense counsel did not request additional instructions.

On appeal, appellant has raised a multi-faceted attack against the instructions given, and the circumstances surrounding their review by his counsel. First, appellant challenges the correctness of those instructions. He claims "[n]othing in these instructions oriented the panel to the fact that a finding that [the victim] was incapable of consenting due to intoxication or unconsciousness was inconsistent with a finding of guilt to the charged offense," and "In light of *Medonza* [sic], the charge against appellant only encompassed 'a sexual act upon a person *capable of consenting* who did not consent.' 85 M.J. at 215 (emphasis added)." Second, appellant claims his trial defense counsel were ineffective for failing to object to the instruction. Third, appellant argues because his trial defense counsel were ineffective, we should apply principles of forfeiture vice waiver for the instructional issue.

## LAW AND DISCUSSION

### A. Waiver

"Whether an appellant has waived an issue is a legal question that this Court reviews de novo." *United States v. Davis*, 79 M.J. 329, 332 (C.A.A.F. 2020) (citing

*United States v. Haynes*, 79 M.J. 17, 19 (C.A.A.F. 2019)). When "counsel affirmatively declines to object and offers no additional instructions, counsel expressly and unequivocally acquiesces to the military judge's instructions . . . his actions . . . constitute waiver." *United States v. Rich*, 79 M.J. 472, 475–76 (C.A.A.F. 2020) (cleaned up). "[W]hile we review forfeited issues for plain error, we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal." *Id.* at 476 (alteration in original) (quoting *Davis*, 79 M.J. at 332).

Appellant waived his right to contest the now-challenged instructions. The military judge noted on the record that the parties had discussed the scope of the consent instruction in chambers. And, when given the opportunity to challenge the instructions as drafted, defense counsel stated, "No objection," without requesting any other instructions be given. Accordingly, appellant has waived any instructional error. *See Davis*, 79 M.J. at 332.

Despite this, appellant invites us to review the instructions for plain error "because trial defense counsel's failure to object resulted from an oversight." Appellant maintains—because he alleges his trial defense counsel were ineffective— any instructional error was merely forfeited rather than waived. He cites CAAF's recent opinion in *United States v. Malone*, __ M.J. __, 2026 CAAF LEXIS 62 (C.A.A.F. 20 Jan. 2026), for this premise. We disagree. Merely asserting ineffective assistance of counsel on appeal does not transform waiver into forfeiture. Nor is it, on its own, sufficient to overcome the presumption of competence.

Although CAAF, in *Malone*, discussed the absence of an allegation of ineffective assistance of counsel on appeal in finding waiver, the issue waived in *Malone* is dissimilar to the waiver of alleged instructional error in this case. In *Malone*, CAAF considered the "presumption of competence in deciding whether Appellee and his defense counsel *knew* at trial of the right to seek dismissal of some [specifications] on multiplicity grounds." *Malone*, 2026 CAAF LEXIS 62, at *12– 13. Conversely, appellant and his counsel were fully aware of the instructions the military judge intended to give and were provided an opportunity to supplement or otherwise suggest amendments to those instructions. Yet still, they did not object. Simply stated, appellant "expressly and unequivocally acquiesce[ed] to the military judge's instructions," and as a consequence, "waived all objections to the instructions . . . ." *See Davis*, 70 M.J. at 332.

Because there is "no error for us to correct on appeal," we turn to whether appellant's defense counsel were deficient for failing to object to the instruction proposed by the military judge.

### B. Ineffective Assistance of Counsel

Separately, appellant contends "[t]o the extent this Court finds waiver, it should find" he was denied the effective assistance of counsel when his defense counsel failed to object to the "erroneous" instruction.

We review allegations of ineffective assistance of counsel de novo. *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citing *United States v. Carter*, 79 M.J. 478, 480 (C.A.A.F. 2020)). "To prevail on an ineffective assistance claim, the appellant bears the burden of proving that the performance of defense counsel was deficient and that the appellant was prejudiced by the error." *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).

"With respect to *Strickland*'s first prong, courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689). This presumption can be rebutted "by showing specific errors that were unreasonable under prevailing professional norms." *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F. 2001) (citation omitted).

Not all errors made by counsel equate to deficient performance. *See United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (noting that to overcome the presumption of competence, appellant must prove counsel's advocacy fell "measurably below the performance . . . [ordinarily expected] of fallible lawyers." (citation omitted) (alteration in original)). To meet his burden, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the [accused] by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Counsel's performance was not deficient. It is difficult to conclude counsel's failure to object to the standard military judge's benchbook instruction on consent, which itself parrots the statutory definition, fell below "prevailing professional norms."[2] Further, albeit in a non-binding memorandum opinion, this court expressly

---

[2] Appellate defense counsel invite us to consider that trial defense counsel "were not cognizant of the change of case law (*Mendoza*) at the time of trial." Appellant's Br. 24 n. 6. As an initial matter, *Mendoza* did not change the law. *See United States v. Sager*, 76 M.J. 158, 161–62 (C.A.A.F. 2017) (use of disjunctive "or" required the court to give separate meaning to "asleep", "unconscious", and "otherwise unaware" when interpreting Article 120, UCMJ). CAAF, in *Sager*, also stated it was required to "give meaning to each word of the statute." 76 M.J. at 161 (internal marks

(continued . . .)

rejected a challenge to this standard instruction when the government's charged theory of sexual assault was without consent. *See United States v. Roe*, ARMY 20200144, 2022 CCA LEXIS 248, *18–19 (Army Ct. Crim. App. 27 Apr. 2022) (mem. op.), rev. denied, 83 M.J. 83 (C.A.A.F. 2022) (noting appellant could not challenge the instructions given in a sexual assault case "because the military judge's instructions were correct statements of the law.").[3] Furthermore, to excise instructions on intoxicated, asleep, unconscious or incompetent would have "foreclosed the panel from even *considering* the extent of the victim's intoxication" or her somnolence, "and neither Article 120, UCMJ nor . . . case law endorses that result." *United States v. Casillas*, 86 M.J. 94, 101 (C.A.A.F. 2025).

The statute states, "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent." UCMJ art. 120(g)(7). As such:

> If a rational trier of fact could find from the evidence *both* that the victim did not consent before falling asleep *and* that the sexual act subsequently occurred while the victim was asleep, the evidence is legally sufficient to prove the "without . . . consent" element of Article 120(b)(2)(A), UCMJ.

*Moore*, 2026 CAAF LEXIS 73, at *10 (emphasis in original). Because the trier of fact was free to consider all circumstances surrounding whether the victim consented, trial defense counsel was not deficient when he did not object to the military judge's instructions.

---

(. . . continued)
omitted) (citation omitted). CAAF in *Mendoza*, merely applied its analysis in *Sager* when it concluded Article 120(b)(2)(A), UCMJ and Article 120(b)(3)(A), UCMJ create separate theories of liability. 85 M.J. at 219–20.

[3] We pause to note that *Roe* was recently brought into question by a separate panel of this court in *United States v. Maas*, ARMY 20230090, 2026 CCA LEXIS 62, *14, 19 (Army Ct. Crim. App. 13 Jan. 2026) (mem. op.). *Maas* was decided without the benefit of CAAF's decision in *United States v. Moore*, __ M.J. __, 2026 CAAF LEXIS 73, at *11 (C.A.A.F. 23 Jan. 2026). *Moore* clarified, while the government may not charge sexual assault without consent and prove lack of consent *solely* on the victim's inability to consent, the trier of fact may "consider[] evidence of the victim's intoxication when determining whether the victim consented." *Id.* at *12. The court further noted the "government can offer evidence of an alleged victim's sleep to prove the absence of consent, but it cannot prove the absence of consent *only* with evidence the victim was asleep." *Id.* at *12 (emphasis in original). Consequently, because all surrounding circumstances should be considered when determining if consent was given, it is not unreasonable to expect a military judge to provide the panel the more fulsome consent instruction.

6

Here, the challenged instructions provided an accurate and correct statement of the law and were appropriately tailored to the facts of appellant's case. Accordingly, counsel were not deficient and thus not ineffective.[4]

## CONCLUSION

The finding of guilty and the sentence are AFFIRMED.[5]

Senior Judge COOPER and Judge SCHLACK concur.

FOR THE COURT:

STEVEN P. HAIGHT
Acting Clerk of Court

---

[4] Even if trial defense counsel's performance could be found deficient, appellant suffered no prejudice and thus would not be entitled to relief. *See Datavs*, 71 M.J. at 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 694). The victim here made her lack of consent clear. The victim and appellant had no prior romantic or sexual relationship. In fact, the victim had repeatedly rebuffed appellant's attempts to begin a romantic relationship. The victim physically resisted appellant's advances when appellant touched her throughout the night. Nonetheless, appellant had sex with her without her consent. Further, we are assured her lack of consent was clear because appellant himself said, "Nothing really happened because you said no." Because the evidence was exceedingly probative that the victim did not consent and appellant himself acknowledged she did not consent, we easily conclude the result would not have differed even had the panel not been provided instructions on sleep or intoxication. *See id.* at 424 (describing prejudice standard); *see also Moore*, 2026 CAAF LEXIS 73, at *10 (evidence is legally sufficient if a rational trier of fact can find a victim did not consent before falling asleep and the sexual act occurred while the victim was asleep.).

[5] The Entry of Judgment (EOJ) is amended to reflect the ACCA Case Number "20240592." The "Modifications or Supplements to Statement of Trial Results" section of the EOJ is amended to correctly reflect that the Statement of Trial Results is dated "12/05/2024".